[No. 2781.]

HARRIET LEE *v.* THE STATE.

1. THEFT—CHARGE OF THE COURT—EVIDENCE.—When the inculpatory facts are purely circumstantial, it is incumbent on the trial court to give in charge to the jury the law applicable to such character of evidence.
2. SAME.—Note a state of case wherein the court, in its charge to the jury, should have submitted the issue whether, if guilty of theft, the defendant was guilty of a felony or a misdemeanor.

APPEAL from the Criminal District Court of Galveston. Tried below before the Hon. Gustave Cook.

The indictment charged the appellant with the theft of one necklace of the value of sixty dollars, and of other personal property of the value of seven dollars and fifty cents, the property of Elvira S. Howard, in Galveston county, on the twenty-fifth day of September, 1882. Two years in the penitentiary was the term awarded the appellant as punishment by a verdict of guilty.

Mrs. E. S. Howard testified, for the State, as follows: "I recognize the gold necklace now before the court as my property, which was stolen from me on or about the twenty-sixth day of September, 1882. It is worth about fifty dollars. I gave no one permission to take it. The two handkerchiefs and the pillow case, with my name on them, I also recognize as my property. One pillow case without my name, another with the name cut out, one handkerchief with no name, two table cloths without marks, an apron, a bracket and a box, I believe to be my property. I cannot say whether or not the counterpane is mine. I

believe all these things to have been stolen from me on or about the ——— day of September, 1882. I had the defendant in my employ as a dining room servant for about three months prior to the loss of the chain or necklace. I do not know who took the stolen articles from my house. They were taken without my consent."

Cross-examined, the witness stated that there was a fire near her house on the night of September 25, 1882, and some of her household goods were removed from her house for safety. She had hitherto kept her necklace in a small box (not the one in evidence) in her wardrobe. She removed that box that night herself, and replaced it in the wardrobe after the fire. She did not then examine the box, but thought the necklace was in it. She had no recollection of seeing the necklace after the fire. The fire occurred on Sunday night. She missed the necklace on the following Tuesday, and sent for a detective to whom she entrusted the matter. The witness did not then suspect the defendant. She dismissed the defendant on the Wednesday following, and told none of the servants about the loss of the necklace. The wardrobe in which the box and necklace were kept stood in the witness's private room. It was kept locked, and could have been entered by no one without a duplicate key. Other servants had as ready access to that room as the defendant had.

The two table cloths were of the same material as the table cloths of the witness. She bought these cloths from a bolt of material in the city, and more of the same material was left in the store. She hemmed these table cloths herself on a sewing machine, but could not tell her own machine sewing from that of any one else. She could positively recognize as her own the articles marked. The defendant was honest so long as she was in the employ of the witness, so far as the witness knew, except that she would feed visitors from the witness's table. Witness considered that she stole the provisions with which she fed such persons. Witness had not missed any of the articles except the chain before she went with an officer to search the defendant's house. The chain was found before this. The chain was sometimes worn by the witness's daughter while the defendant was employed by the witness, but witness could not say that the defendant ever saw the daughter wear it. Defendant was not at home when the witness went with the officer to search her house.

Detective Hennessey testified, for the State, that on Monday or Tuesday, about September 26, 1882, Mrs. E. S. Howard sent for him and told him about the loss of the necklace, and placed the matter in his hands for investigation. On the following Monday a man told him that another man had shown him a coin which was part of a chain. The witness wrote this man a note requesting an interview. The man came to the witness's office next day, and exhibited the coin, and told witness that the defendant had the chain to which it belonged. This man and the witness went to the defendant's house and, describing the chain, asked her if she had it. She replied that she had it, and handed it to the witness, and asked him who told him that she had it. The witness did not then arrest the defendant, but took the chain to Mrs. Howard, who identified it. The man from whom the witness got the coin and derived his information concerning the chain was present in court.

Cross-examined, the witness said that the defendant made no effort to conceal the chain, but said that she found it on some of the down town streets.

Police Officer Cossar testified, for the State, that he went with Mrs. Howard to the defendant's house to execute a search warrant, on the third day of October, 1882, having a day or two previously arrested the defendant. The defendant was in custody at the police station when the search was made. The articles before the court were found by the witness at the defendant's house, and by him were taken to the police station, where the defendant was. Some of these things the defendant claimed as her own, and some she said were brought to her by another woman to be returned to Mrs. Howard. She claimed that the apron was one she wore in waiting on the dining room, and that she had carried it away by mistake. Some of these things the witness found in the defendant's trunk, others on her bed, and others in different parts of the house. The pillow slip with the name cut out is not made of the same material as that marked in the name of Howard. The defendant claimed the box and bracket as her own. She said that she found the necklace down in the city.

Sheriff Owens testified, for the State, that the defendant was released on bail, and left the city of Galveston about November 10, 1882. Witness had her rearrested in Austin and returned to Galveston.

Reverend Mack Williams, for the defense, testified that he

was at the house of the defendant on a Saturday night near the close of September, 1882, and saw the chain in evidence lying on her table. He examined the chain and asked the defendant to give it to him, which she refused to do, saying that it was not hers, that she found it that afternoon, and wanted to find and return it to the owner. One of the coins on the chain had the Lord's Prayer engraved on it. This the witness asked for, but it was refused for the same reason. Defendant asked the witness to assist in finding the owner of the chain. Witness agreed to do so and detached one of the coins to aid him in his search. On the next Monday morning the witness showed the coin to a man on Market street, and told him about the chain being found. That night witness received a note from Detective Hennesey, called on him next day, showed him the coin, told him about the chain, and went with him to defendant's house. The defendant made no effort to conceal the chain, but handed it to Hennesey, saying that she found it near the Catholic church, and was trying to find the owner. Hennesey said that he thought he knew the owner, and the defendant allowed him to take the chain without demur. Witness did not know why the defendant left Galveston while under bond. Witness was in Austin when the defendant was rearrested on or about January 1, 1883, and was friendly to the defendant.

Charity Walker testified, for the defense, that she was passing along Church street, going east, and saw the defendant going west from the east. At a point near the Catholic church, and when the witness had approached quite near to the defendant, she saw the defendant stoop and pick up something, which, on reaching her, the witness found to be the chain now in evidence.

Witness denied, on cross-examination, that she had ever said on a former occasion that she was not with defendant when the latter found the chain. She was near, and going towards defendant when the latter picked the chain up from the street.

Bill Paisley testified, for the defense, that on Sunday, about the first of October, the defendant was at his house, and showed witness and his wife the chain in evidence, which she said she had found the evening before, near the Catholic church. Witness offered to buy it if she would sell it for ten dollars, but she declined, saying that she was trying to find the owner. This witness was corroborated by Emma Paisley.

Ernest Smith, the defendant's brother, testified that the defendant showed him the chain on Saturday night, and said that she

found it. Witness offered her five dollars for it, which she declined, saying that she was trying to find the owner. Witness tried to borrow it to wear that night. This request she refused. Defendant kept boarders before she went to work for Mrs. Howard, and owned white table cloths such as those in court, and counterpanes such as that in evidence. She had owned the bracket in evidence for five or six years.

Sarah Allen testified, for the defense, that the defendant had white table cloths, such as that in court, before she went to work for Mrs. Howard. Witness worked at Mrs. Howard's when the defendant did, and was in Mrs. Howard's service some eight or nine months, and frequently cleaned up Mrs. Howard's room. She never saw a chain like that in evidence during her stay at Mrs. Howard's. Witness did not go to Mrs. Howard's, crying, after the defendant left. She left Mrs. Howard three weeks before the defendant, and had never been back since the defendant left.

Sarah Williams testified that the defendant had such table cloths and counterpanes and pillow slips as those in evidence before she went to work for Mrs. Howard.

The motion for new trial assailed the charge of the court and the sufficiency of the evidence to sustain the conviction.

*N. B. Bendy*, for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

WILLSON, JUDGE. This is a case in which the evidence adduced on the trial to establish the guilt of the defendant was all circumstantial. There was no direct evidence proving that she committed the theft. Such being the character of the evidence, it was incumbent upon the trial judge to instruct the jury on the legal principles having relation to that kind of evidence. (*Gonzales* v. *The State*, 12 Texas Ct. App., 657.) In this case the court failed to charge the jury upon this subject, and therefore failed to charge the law applicable to the case, as has been well settled by the repeated decisions of the Supreme Court and of this court.

Considering the peculiar facts of this case, we think the court, in its charge, should have submitted to the jury the issue as to whether or not the theft, if they found defendant guilty of a theft, was a misdemeanor; that is, whether the property stolen

was of less value than twenty dollars. We think this was necessary, because there was evidence tending to show that defendant found the necklace, and if the jury did not believe from the evidence beyond a reasonable doubt that she was guilty of the theft of this article, they could not have properly convicted her of a felony, although they might have believed beyond a reasonable doubt that she was guilty of the theft of the other property, because the other property was less than twenty dollars in value. We think the court erred in not giving the jury a charge presenting this phase of the case, as presented by the evidence.

Because of the errors in the charge of the court, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered May 30, 1883.